**NORTH VALLEY BANK, a State Chartered Colorado Banking Corporation located in the City of Thornton, State of Colorado, Plaintiff,**

v.

**NATIONAL BANK OF AUSTIN, a National Bank Association located in the City of Chicago, State of Illinois, Defendant.**

No. 76 C 3613.

United States District Court,
N. D. Illinois, E. D.

Aug. 22, 1977.

---

R. Rex Renfrow, III, Isham, Lincoln & Beal, Chicago, Ill., Morrato, Gueck & Colantuno, P.C., Denver, Colo., for plaintiff.

Edmund P. Boland, Edward M. White, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

FLAUM, District Judge:

The instant action involves the attempt by plaintiff to obtain payment under a letter of credit issued by defendant. As usually occurs in such situations, the primary obligor to plaintiff has proved judgment proof and the court is faced with the classical legal dispute between two, facially bona fide parties.

Plaintiff's complaint, which is predicated on diversity jurisdiction, 28 U.S.C. § 1332, is divided into two counts. Count I alleges that on August 2, 1974 defendant executed and delivered to plaintiff an irrevocable letter of credit which authorized plaintiff to draw at sight an amount of $75,000.00. The letter of credit indicated that it expired on March 3, 1975. In reliance on the aforementioned letter, plaintiff granted a loan to Donald R. Chambers on August 2, 1974 in the amount of $75,000.00 plus interest payable on or before January 29, 1975. After Mr. Chambers failed to pay his obligation, on February 28, 1976 plaintiff submitted its draft to defendant in the amount of $75,-000.00. Plaintiff further alleges that the draft submitted was in accordance with the

terms of the letter of credit and that defendant has refused payment thereon.

Count II realleges the aforementioned facts. Plaintiff further alleges that on March 3, 1975 plaintiff telephoned defendant to determine if the correspondence containing the letter of credit and the draft had been received by defendant and if it was in order. Plaintiff alleges that defendant's President informed it that the February 28, 1975 correspondence had been received and that while the draft was not technically correct the defendant would honor it. Although plaintiff states that it offered to fly to Chicago, Illinois to correct any defect in its draft, plaintiff alleges that it relied on defendant's President's representation and did not do so. Finally, on March 6, 1975, plaintiff alleges that it received a telegram from defendant stating that the letter of credit would not be honored. Although repeated demands for payment were made by plaintiff, defendant allegedly has continued to refuse to honor the letter of credit.

Presently before the court is defendant's motion for summary judgment on Count I and its motion to dismiss Count II for failure to state a claim upon which relief can be granted. This court shall rule on each motion seriatim.

### A. Motion for Summary Judgment on Count I

As to Count I, defendant argues that it was not required to honor the letter of credit since there exists no genuine issue of material fact that plaintiff's February 28, 1975 demand for payment did not comply with the terms of the letter of credit. Defendant relies on Ill.Rev.Stat. ch. 26, § 5–114,[1] for this principle. Section 5–114 provides:

An issuer must honor a draft or demand for payment *which complies with the terms of the relevant credit* . . . . .

*Id.* (emphasis supplied). First, defendant sets forth the letter of credit which states:

We hereby authorize you to draw on the National Bank of Austin, Chicago, Illinois . . . up to the amount of Seventy-five Thousand and 00/100 Dollars . . available by your draft at sight.

One draw will be permitted, and *the draft* cannot be presented before six months from the date of this letter. A copy of this letter must accompany the draft, and *your draft must bear the clause "Drawn under National Bank of Austin Letter of Credit No. 8274."*

We engage you that *a draft* drawn under and in compliance with this letter of credit will be duly honored if presented to us not before six months and no later than March 3, 1975.

(Emphasis supplied). Next, the defendant presents the "draft" submitted by plaintiff on February 28, 1975, see Appendix 1 *infra*, which on its face does not bear the plaintiff's signature or the clause, "Drawn under National Bank of Austin Letter of Credit No. 8274." Thus, defendant argues that the "draft" submitted by plaintiff was not in accordance with the letter of credit requiring honor under section 5–114 because: (1) it was not, in effect, a "draft," since Ill.Rev.Stat. ch. 26, § 3–104(1)(a), requires the signature of the marker or drawer on the document to create a draft; and (2) it did not contain the clause required by the letter of credit.

In response, plaintiff does not challenge the aforementioned factual statements of the defendant. Rather, plaintiff argues that its February 28, 1975 correspondence to defendant, which included the "draft" referred to by plaintiff above, along with a letter written by plaintiff, supplied the necessary terms and signature to establish compliance with the letter of credit. Thus, plaintiff points out that the "draft" referred to by defendant was an "envelope draft" which on the reverse side bore a stamp which stated:

Pay To The Order of Any Bank, Banker or Trust Co. All Prior Endorsements

---

1. Although the parties have not addressed the choice of law issue, they both rely on Illinois law as providing the rule of decision in this case. This court does not find that any other state's laws should control and therefore Illinois law will be applied in this case.

Guaranteed. North Valley State Bank, . . .. as well as the signature of Paul R. Mullen, vice-president of plaintiff. *See* Appendix 2 *infra.* Moreover the letter enclosed in the "envelope draft" stated:

> As our loan with Mr. Donald R. Chambers is now delinquent more than three weeks, with much contact and no definite action on Mr. Chamber's part, this bank [plaintiff] feels it has no recourse except to execute on your letter of credit # 8274 before the expiration date . . ..

and again was signed by Mr. Mullen. Accordingly, plaintiff suggests that the signature on the back of the envelope draft or the signature on the letter was a sufficient signing for purposes of section 3–104 to make the "draft" valid, and that the letter contained the clause required by the letter of credit.

█ However, even assuming that the plaintiff is correct in arguing that both the letter and the back of the envelope draft are to be considered part of the "draft" for purposes of determining plaintiff's compliance with the requirements of the letter of credit, *see United Milk Prod. Co. v. Lawndale Nat'l Bank,* 392 F.2d 876, 879 (7th Cir. 1968),[2] *but see Courtaulds North America, Inc., v. N. C. Nat'l Bank,* 528 F.2d 802 (4th Cir. 1975), this court must agree with defendant that the "draft" sent by plaintiff failed to contain a proper signature as a matter of law. Thus, this court recognizes that section 3–104 does not contain a requirement that a draft be signed in a certain location on a document, and that Ill. Rev.Stat. ch. 26, § 1–201(39) defines the word "Signed" to "includes any symbol executed or adopted by a party with present intention to authenticate a writing." Nevertheless, section 3–104 does require not merely that the "draft" be *signed,* but that it "must (a) be signed *by the maker* or *drawer* . . .." (Emphasis supplied).

█ This court believes that the key provision of the Illinois Commercial Code controlling in this case is Ill.Rev.Stat. ch. 26, § 3–402, which provides:

Unless the instrument clearly indicates that a signature is made in some other capacity *it is an indorsement.*

*Id.* (emphasis supplied). As the official comment to the provision of the Illinois Commercial Code states:

> The revised language is intended to say that any ambiguity as to the capacity in which a signature is made must be resolved by a rule of law that it is an indorsement. Parole evidence is not admissible to show any other capacity . . ..
>
> . . . Thus by long established practice judicially noticed or otherwise established a signature in the lower right hand corner of an instrument indicates an intent to sign as the *maker* of a note or the *drawer* of a draft.

Comment, U.C.C. § 3–402 (emphasis supplied). Thus where an ambiguity exists as to the nature of a signature found on a draft, *as a matter of law,* the signature is to be interpreted as an endorsement and not as a signature of a drawer.

█ In the instant action it cannot be reasonably argued that the signatures identified by plaintiff as constituting the signature of the drawer of the draft are not ambiguous at best. First, as to Mr. Mullen's signature on the back of the envelope draft, it follows a stamped statement that, *"All Prior Endorsements Guaranteed,"* thereby strongly suggesting that Mr. Mullen's signature is an endorsement as well. Second, as to Mr. Mullen's signature on the letter, its ambiguity is demonstrated by the two facts that it follows a salutation in a standard business letter and it is not in the right-hand corner of the face of the envelope draft where a line is provided for the signature of the drawer. Moreover, plaintiff's argument that *either* signature could be the proper signature raises an ambiguity itself.

Therefore, since as a matter of law, there being no genuine issue of material fact, the

---

2. In *United Milk Prod. Co.,* the Seventh Circuit held that a letter and telegram when read together could be considered a "check" for purposes of Ill.Rev.Stat. ch. 26, § 3–104(2)(b).

"draft" presented to defendant on February 28, 1975 was not a valid draft in accordance with the terms of the relevant letter of credit, defendant was not required to honor it, and defendant's motion for summary judgment on Count I is granted. Fed.R. Civ.P. 56.

### B. Motion to Dismiss Count II

In this motion, defendant, although accepting as true plaintiff's allegations, argues that Count II is legally deficient on its face and does not state a claim for relief. Defendant argues that plaintiff's allegations amount to the claim that defendant's President, on March 3, 1975, the day the letter of credit expired, *orally* agreed to honor the draft as presented. However, relying on Ill.Rev.Stat. ch. 26, § 3–410, which provides:

> (1) Acceptance is the drawee's *signed* engagement to honor the draft as presented. It must be *written* on the draft . . .

*id.* (emphasis supplied), defendant contends that Illinois law does not recognize oral acceptances of drafts.

Nevertheless, this court cannot agree with defendant that Count II of plaintiff's complaint is barred by the terms of section 3–410. First, as plaintiff points out, this court recognizes that the Illinois Commercial Code, in section 1–103, provides that:

> Unless displaced by the particular provisions of this Act, the principles of . . equity . . . estoppel . . . or other validating or invalidating cause shall supplement it provisions.

Ill.Rev.Stat. ch. 26, § 1–103. *See Avco Delta Corp. Canada Ltd. v. United States*, 459 F.2d 436, 440–41 (7th Cir. 1972).

■ Second, courts from other jurisdictions faced with the issue of whether the drawee can waive the terms of a letter of credit or can be estopped from denying conformity, have concluded that such principles of waiver and estoppel exist under the Uniform Commercial Code. *See, e.g., Chase Manhattan Bank v. Equibank*, 550 F.2d 882, 887 (3d Cir. 1977); *Barclays Bank D.C.O. v. Mercantile Nat'l Bank*, 481 F.2d

1224, 1237 (5th Cir. 1973), *cert. denied*, 414 U.S. 1139, 94 S.Ct. 888, 39 L.Ed.2d 96 (1974). Thus, to paraphrase the court in *Barclays Bank*,

> [National Bank of Austin] cannot lull [North Valley Bank] into believing that there was no problem with the documentation when there was still time for [North Valley Bank] to have attempted to cure the technical defect and then turn around and assert the lack thereof as a defense to the suit on the draft.

*Id.* at 1237.

Third, and more importantly, the Illinois Code Comment to Ill.Rev.Stat. ch. 26, § 5–114 expressly recognizes the validity of the waiver and estoppel theory presented in Count II. Thus, this comment states:

> A party may be precluded from raising the issue of conformity on grounds of waiver or estoppel. *Continental Nat'l Bank v. National City Bank*, 69 F.2d 312 (9th Cir. 1934) . . . ..

*Id.*

Finally, the section of the Code cited by defendant does not indicate that plaintiff's theory of estoppel is barred. Thus, the official Uniform Commercial Code Comment to section 3–410 provides:

> Nothing in this section is intended to eliminate any liability of the drawee in contract, tort or otherwise arising from the separate writing or any other obligation *or representation*, as provided in Section 3–409

Comment 3, U.C.C. § 3–410 (emphasis supplied). Section 3–409(2) provides that:

> Nothing in this Section shall affect any liability in contract, tort or otherwise arising from *any letter of credit* or other obligation *or representation* which is not an acceptance.

Ill.Rev.Stat. ch. 26, § 3–409(2) (emphasis supplied). Again, the official Comment to this section states:

> The drawee who fails to accept may be liable to the drawer or to the holder for breach of the terms of a letter of credit or any other agreement by which he is obligated to accept. He may be liable in

tort or upon any other basis *because of this representation that he has accepted, or that he intends to accept.* Comment 3, U.C.C. § 3–409(2).

▮ Accordingly, this court cannot agree that Count II fails to state a claim upon which relief can be granted. Plaintiff has alleged that defendant lulled it into believing that its draft was sufficient and would be honored. Plaintiff also alleges that but for this representation it would have remedied any defect within the time limit for calling in the letter of credit. If plaintiff can prove these allegations it will be entitled to prevail in this cause.

## C. Conclusion

Therefore, defendant's motion for summary judgment on Count I is granted and its motion to dismiss Count II is denied.

### Appendix 1

NORTH VALLEY BANK

NO._____

CUSTOMER'S DRAFT

AT SIGHT_____   THORNTON, COLORADO_February 24, 1975_____

PAY TO THE ORDER OF_____ NORTH VALLEY STATE BANK _____ $75,000.00

NORTH VALLEY BANK ***$75,000 AND 00 CTS_____ DOLLARS

VALUE RECEIVED AND CHARGE THE SAME TO ACCOUNT OF     WITH EXCHANGE

TO_National Bank of Austin_
5465 West Lake St.
Chicago, Ill. 60644
Att: H. P. Burke, President

ROCKY MOUNTAIN BANK NOTE CO., DENVER

### Appendix 2

PAY TO THE ORDER OF
ANY BANK, BANKER OR TRUST CO.,
ALL PRIOR ENDORSEMENTS GUARANTEED
NORTH VALLEY STATE BANK
82-237 THORNTON 29, COLO. 82-237

PAY TO THE ORDER OF
ANY BANK
ALL PRIOR
NORTH V. STATE BANK
82-237 THORNTON 29, COLO. 82-237